UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| WALTER RICHARD BROTHERTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 11-129-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| VICTORY SPORTS, INC. and | ) | **&** |
| CITY OF CORBIN, KY, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

By all accounts, motocross racing is a dangerous sport. Nevertheless, those organizing such events should still attempt to implement basic safety precautions. How many are necessary to protect even experienced participants is an underlying question in this case. The Plaintiff, who was injured during a motocross event in Corbin, Kentucky, argues that the safety precautions taken by the Defendants were not enough, and that the event promoter and the City acted with willful and wanton disregard for his safety. The Court, after reviewing the evidence in the record, disagrees. For the reasons that follow, summary judgment in favor of the Defendants is GRANTED.

**I**

In January 2011, Defendant Victory Sports, Inc. ("Victory") staged an indoor motocross race, specifically the "Kentucky Indoor Motocross Championship," at the Southeastern Kentucky Agricultural and Expo Complex ("Arena"), owned by the City of Corbin ("Corbin"). [R. 33-1 at 2.] Victory licensed the Arena from Corbin pursuant to a

written agreement with numerous conditions. [R. 33-2.] Plaintiff Walter Richard Brotherton attended this event with professional motocross racer Robbie Horton, for whom Brotherton had worked as a volunteer mechanic for six years prior to the incident in question. [R. 56-1 at 2.]

During a practice heat at the Corbin Arena, connected to this particular event, Brotherton was injured while standing near the starting gate as the racers went around the track. [R. 56-1 at 1.] Brotherton claims that other people were also standing there with him, and that he, along with them, decided to move and watch the practice from another location because the area they were standing in was unsafe. [R. 57 at 3.] At that moment, Shea Corzatt rode his motocross bike over a hill on the racecourse and careened into the starting area where Brotherton was just leaving. [R. 1 at 4.] Corzatt collided with Brotherton, resulting in injuries to Brotherton's leg that required an air ambulance flight and extensive medical treatment. [*Id*.] Brotherton brought suit against Victory, the City of Corbin, and Shea Corzatt, alleging negligence. [R. 1.] Defendant Corzatt has since settled with Brotherton and has been dismissed from this action. [R. 54.]

Prior to the event where Brotherton was injured, Brotherton had attended numerous indoor motocross events with Horton, including three events at the Corbin arena. [R. 56-1 at 2-3.] Brotherton was well-known to several Victory employees and staff from his participation in previous events that Victory sponsored. [*Id*. at 2-3.] In his deposition testimony, Brotherton admitted that when he was standing on the track near the riders, he knew he was supposed to pay attention to events on the track in addition to watching his rider. [R. 56-2 (Brotherton Depo.) at 30-31.] Victory states, and Brotherton has not disputed, that there were several warning signs posted around the Arena

indicating that motocross racing was dangerous, that people entering the grounds assumed all risk of injury, and that certain areas were restricted. [R. 56-1 at 6.]

The parties appear to differ, however, in their accounts of the relevant facts concerning whether Brotherton was warned not to stand in the area near the gate where he was injured. Victory has submitted the deposition of the track designer, Larry Harrison, who testified that on the day of the accident he warned Brotherton and the other mechanics to stay in the designated mechanics area where they would be safer. [*Id*. at 6-7 (citing R. 56-8 (Harrison Depo.) at 22-23).] Victory also submits depositions from several employees who testified that Brotherton was repeatedly warned not to stand in the area where he was injured, and that he ignored several warnings to move from that location. [*See* R. 56-1 at 7-10; R. 56-3 at 14; R. 56-10 at 10-11; R. 56-5 at 17-18; R. 56-8 at 18.] Brotherton, however, claims that he was told by a race official to stand in the place where he was injured, and that he did not stand there long enough for Victory employees to have told him to move away as many times as they claim. [R. 57 at 2-3.]

Prior to Brotherton entering the Arena, he signed a release and waiver of liability. [R. 34-5.] This Court previously found that the release barred Brotherton's claims of simple negligence, but that Kentucky law does not permit one party to release another party from liability for willful or wanton negligence. [R. 38.] Accordingly, the Court granted summary judgment to the Defendants on Brotherton's negligence claim, but determined that material facts "remain[ed] unsettled" concerning Brotherton's allegations that the Defendants acted with willful and wanton negligence. [R. 38 at 8-9.] The parties have since conducted further discovery on that issue, and the remaining Defendants have filed another motion for summary judgment which is now ripe for review. [*See* R. 56.]

## II

### A

As stated in the Court's previous opinion, this action is in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. [R. 38.] Because Kentucky is the forum state, its substantive law will be used. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (citations omitted). However, federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard. *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006).

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to

support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255).

B

In Kentucky, willful or wanton negligence is not necessarily defined by "ill will toward the person injured," but by "an entire absence of care for the life, person, or property of others which exhibits indifference to consequences." *Louisville & N.R. Co. v. George*, 129 S.W.2d 986, 988-89 (Ky. 1939). Indeed, "[a] *complete* indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence." *Id.* at 989 (emphasis added). Federal courts applying Kentucky law have also relied on this definition when finding that Kentucky law distinguishes willful and wanton negligence from both ordinary negligence and from gross negligence. *See Donegan v. Beech Bend Raceway Park, Inc.*, 894 F.2d 205, 207-08 (6th Cir. 1990); *Estate of Peters v. U.S. Cycling Federation*, 779 F.Supp. 853, 855-56 (E.D. Ky. 1991). Ordinary negligence is "the absence of ordinary care," and gross negligence is "the absence of slight care." *Donegan*, 894 F.2d at 207 (quoting *Lowe v. Commonwealth*, 181 S.W.2d 409, 412 (1944) and *McTavish v. Chesapeake & O.R.R.*, 485 F.2d 510, 512 (6th Cir. 1973)). Willful and wanton negligence, however, involves even more culpability – it is defined as "the *entire* absence of care for the life, person or

5

property of others," along with "an element of conscious disregard of the rights or safety of others, which deserves extra punishment in tort." *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp*., 238 S.W.3d 644, 655, n. 33 (Ky. 2007) (emphasis added) (quoting *Donegan*, 894 F.2d at 207); *see also Louisville & N.R. Co. v. George*, 129 S.W.2d 986, 988-89 (Ky. 1939).

## III

### A

In applying the above standard to the facts of the present case, Victory moves the Court to grant summary judgment in their favor because the record does not support the allegation that Victory acted with an entire absence of care for Brotherton's safety. In support of their motion, Victory presents the Court with multiple safety precautions that Victory took both in the track's design and in attempting to warn or otherwise protect people involved in the event, such as the following: 1) requiring all participants to sign detailed release forms warning of the danger involved; 2) posting signs near the entrance to restricted areas warning of the inherent danger of such areas and that each individual was responsible for their own safety; 3) stationing numerous safety personnel near the track; 4) providing on-site emergency medical care; 5) following all safety protocols required by the American Motorcyclist Association (AMA); 6) instructing and warning riders as to how the course was set up before any racing or practice racing took place, and warning riders to ride below their ability until they gained familiarity with the track layout; 7) holding numerous practice heats to allow riders to familiarize themselves with the track; 8) using experienced personnel to design and build the track and viewing safety as the "foremost consideration" in doing so;  9) inspecting track designs and setups

6

before live racing began in order to evaluate any necessary "safety-related adjustments"; 10) ensuring that all course boundaries, obstacles, and turns were a "sufficient distance from permanent walls and other restricted areas where crew members stand"; 11) designing track features near areas where people were standing for less experienced riders; 12) providing designated areas where crew members were instructed to stand; and 13) instructing crew members on each day of live racing where to stand in order to avoid injury. [R. 56-1 at 3-6.]

In particular, Victory also presents evidence of their track designer's expertise in designing indoor motocross tracks, as well as his attendance at AMA risk management workshops. [R. 56-1 at 5.] Victory claims, and Brotherton does not dispute, that the track used at the Corbin Arena when Brotherton was injured was a design that Victory frequently used in other places as well without incident. [*Id*. at 5.] Before any racing began, Victory had experienced employees review the track's design and construction, and also had the track designer continue to monitor track features for safety issues throughout the day. [*Id*. at 5-6.] Moreover, the distance from the starting gate near where Brotherton was standing "was in excess of the minimum 30-foot distance required by insurance guidelines," and Victory stationed flaggers near the gate area to keep people behind the gate during racing. [*Id*. at 6.] Finally, Victory presents their excellent safety record in preventing and minimizing injuries to those involved with their motocross events, and Victory employees have testified as to the lack of complaints concerning safety that Victory has received over many years. [*Id*. at 7.] Clearly, if Victory took multiple safety precautions in designing and organizing their event, they could not have exhibited the *entire* absence of care necessary for Brotherton's claim to prevail.

7

In Brotherton's response to the motion for summary judgment presently before the Court, he presents only two alleged facts[1] which, according to Brotherton, "alone are sufficient for a jury determination of wanton and willful negligence." [R. 57 at 7.] Those facts are as follows: 1) the track was designed in an unsafe manner because riders taking the final jump could easily deviate from the course and enter the crew area; and 2) race officials told Brotherton to stand in the crew area where Corzatt struck him, which was a dangerous area to stand in due to the track's design. [R. 57 at 7.] Even if true, however, these allegations do not amount to willful and wanton behavior on the part of Victory.

In support of his claim, Brotherton offers his own testimony that he was told to stand in the area where he was injured, and he offers the opinion of his expert Keith Kizer who opined that Victory[2] was "negligent" both in designing the track and in telling Brotherton to stand in such a dangerous place.[3] [R. 57 at 3-4.] Based on this testimony, Brotherton argues that the track design where he was standing was dangerous. His only evidence to support that contention is Kizer's opinion that Victory was negligent by not erecting a physical barrier where Brotherton was standing to protect anyone standing in that location. While such testimony might support a claim of ordinary negligence, or perhaps even gross negligence, it is not enough to constitute the *entire* absence of care required for a claim of willful and wanton negligence.

---

[1] In Brotherton's response to the Defendants' *previous* motion for summary judgment, he raised four alleged facts that he argued would support a conclusion that Victory acted with wanton and willful negligence. [*See* R. 35-1 at 12.] After conducting further discovery on this issue, Brotherton now only presents the two discussed herein.

[2] It should be noted that in Mr. Kizer's Report and deposition excerpts, Mr. Kizer refers to "Action Sports" rather than to Victory Sports.

[3] The Court further notes that Mr. Kizer opined as to legal conclusions concerning negligence, such as stating "it is my opinion that Action Sports was negligent. . . ." [R. 57-2 at 2.] The Court, however, need not determine whether this was appropriate for expert testimony since the Court has already found that Brotherton's negligence claims were barred by the release form that he signed. *See Donegan*, 894 F.2d at 206, n. 2.

As explained above, once the party moving for summary judgment has satisfied its burden of showing "an absence of evidence to support the non-moving party's case," *Celotex*, 477 U.S. at 325, the burden shifts to the non-moving party to come forward with specific facts demonstrating the existence of a genuine dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Here, it is undisputed that Victory took numerous safety precautions, and thus Victory has demonstrated that it clearly exercised at least some care, if not great care, concerning the safety of event participants. Accordingly, Victory has satisfied its burden of showing that there is an absence of evidence in the record to support Brotherton's claim that Victory exhibited "an entire absence of care" and "conscious disregard" for safety, such that "extra punishment" is deserved. *See Louisville & N.R. Co.*, 129 S.W.2d at 989.

Thus, the burden has shifted to Brotherton to demonstrate that a genuine dispute exists – a burden which Brotherton has not met. Brotherton does not dispute Victory's claims that the track design was consistent with the AMA's safety protocols, nor does he dispute the experience of the track designer or inspector, nor does he dispute that the distance in front of the starting gate area exceeded the minimum requirements of insurance guidelines. Rather, Brotherton's primary basis for alleging that the track was unsafe is Mr. Kizer's testimony that Victory did not make the track "as safe as they could [have]," [R. 57-3 at 7] and that "a better design" for the track would have been to have mechanics stand on the other side of the gate. [R. 57 at 5.] However, allegations that Victory could have made the track safer or that "a better design" for the track existed has no bearing on whether Victory was willfully or wantonly negligent in using the design.

Such arguments would only apply to ordinary negligence claims, which are barred by the release form and do not apply to claims of willful and wanton negligence.

In a case similar to the one at hand, a cyclist's estate sued after the cyclist died during a bicycle race when his bicycle went off the track, and the defendants who had organized the race moved for summary judgment after providing the court with a list of safety precautions they had taken. *Estate of Peters v. U.S. Cycling Fed'n*, 779 F. Supp. 853, 854-56 (E.D.Ky. 1991). The decedent's estate responded by providing the court with several other precautions that allegedly should have been taken but were not, and the defendants even admitted that the course possibly could have been safer. *Id*. at 856. In applying Kentucky's standard for willful and wanton negligence, however, the court found that "[t]he fact that defendants took any precautions at all demonstrates that they did not disregard the danger presented. . . . The argument that defendants should have provided better warnings or required the riders to ride through the course prior to the competition only go to whether defendants acted negligently," but "does not rise to the level of willful or wanton misconduct." *Id*. at 856. Here, too, Victory took numerous safety precautions, thus demonstrating that they did not act with complete indifference to the consequences of their decisions, and "no trier of fact could find otherwise" based on the minimal evidence Brotherton has provided. *Id*.

The parties both cite another case applying Kentucky's standard for willful and wanton negligence, in which the plaintiff was injured during a stock car race when his car slipped on a patch of water and struck a concrete post beside the track. *See Donegan v. Beech Bend Raceway Park, Inc.*, 894 F.2d 205, 206-07 (6th Cir. 1990). There, the court found that while the liability release form signed by the plaintiff did not bar his claims of

10

willful and wanton negligence, such a claim must fail on summary judgment when the record indicated that the plaintiff had raced at that track several times before and was familiar with the track's layout; when a maintenance crew had dried at least part of the track before the race began, showing at least some care for the drivers' safety; and when the track owner was planning to remove the concrete post as soon as it could obtain the proper equipment to do so. *Id*. at 208. Under those facts, which were even less favorable to the defendant than in Brotherton's case, the court could not say that a jury could find the defendant had committed willful or wanton negligence. *Id*. Here, Brotherton was also familiar with the track and the Arena, and Victory has demonstrated at least some care for the safety of those involved.

The only potential dispute concerning the safety precautions Victory took is Brotherton's claim that he was told to stand in an unsafe area, which appears to contradict Victory's contentions about where mechanics were supposed to stand, as well as the testimony of Victory employees stating that they specifically told Brotherton not to stand in the area where he was injured. The Court acknowledges that credibility determinations are for a jury and are not properly resolved through summary judgment. *See Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Here, however, it would not matter whether a jury believed Brotherton's testimony about where he was told to stand because, in light of the other evidence presented, it would not materially affect the question of whether Victory exhibited an *entire* absence of care for the participants' safety. Kentucky courts have stated that a party charged with wanton or willful behavior "is not simply one who is more careless than one who is merely negligent; wanton misconduct is such as puts the actor in the class with the wilful doer of wrong." *Marye v.*

11

*Com.*, 240 S.W.2d 852, 855 (Ky. 1951) (quoting 38 Am. Jur., Negligence, section 48). Even if a jury accepted all of Brotherton's testimony as true, and even when making all inferences in Brotherton's favor, as the Court is required to do, *see Anderson*, 477 U.S. at 255, there is still no evidence in the record that Victory willfully did anything wrong. *See Marye*, 240 S.W.2d at 855. Brotherton's allegations still do not negate the fact that Victory showed more than a complete absence of care by taking the safety precautions that Brotherton does not dispute. Brotherton knew the risk involved, he was experienced in motocross racing, and he had been warned of his duty to leave any area where he felt unsafe regardless of where anyone told him to stand. [*See* R. 9-1, ¶1.] More importantly, Victory took numerous other safety precautions that negate Brotherton's claim regardless of where he may have been told to stand. Thus, even if a jury believes Brotherton's testimony that he was told to stand in a dangerous area, the facts alleged do not show that any possible negligence on Victory's part was willful or wanton.

**B**

Brotherton has presented no facts at all concerning the City of Corbin's liability in this case. He has not even attempted to present arguments to support a claim that the City of Corbin acted with willful and wanton negligence. As explained above, once the burden shifts to the non-moving party, that party must present some evidence showing the existence of a genuine dispute, but Brotherton has not made any arguments concerning the City of Corbin in his responsive brief. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Accordingly, the Court must grant summary judgment to the City of Corbin and dismiss the City from this case.

## IV

Based on the evidence presented in the record, a reasonable jury could not conclude that either remaining Defendant acted with willful or wanton negligence by showing a conscious disregard for Brotherton's safety. Thus, no genuine issue of material fact remains in this case, and summary judgment will be granted in favor of the Defendants. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Summary Judgment [**R. 56**] is **GRANTED**;

2. The Final Pretrial Conference scheduled for **June 16, 2014**, and the Jury Trial scheduled for **July 7, 2014**, are **CANCELLED**; and

3. The Court will enter an appropriate Judgment contemporaneously herewith.

This 2nd of June, 2014.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge